# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OCIE L. BRUMMELL, Administratrix** : | **CIVIL ACTION NO. 1:09-CV-01816** |
| **of the estate of Malcolm Brummell** : | |
| : | |
| **Plaintiff** : | **(Judge Conner)** |
| : | |
| v. : | |
| : | |
| **CITY OF HARRISBURG, CHARLES** : | |
| **KELLAR, and MARC MOULE** : | |
| : | |
| **Defendants** : | |

## **MEMORANDUM**

This is a civil rights action filed by plaintiff Ocie L. Brummell ("Brummell") as administratrix of the estate of Malcolm Brummell ("the decedent") against the City of Harrisburg ("the City"), Chief of Police Charles Kellar ("Kellar") of the Harrisburg Bureau of Police ("the HBP"), and Officer Marc Moule ("Moule"), also of the HBP. Presently before the court are two motions (Docs. 11, 13) to dismiss certain claims, filed pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6). One motion was filed jointly by the City and Kellar. (Doc. 11). The other was filed by Moule. (Doc. 13). For the reasons that follow, the court will grant the joint motion of the City and Kellar and deny Moule's motion.

## I. Statement of Facts[1]

This case arises out of an incident that occurred in the early morning hours of September 23, 2007. (Doc. 1 ¶ 9). At approximately 2 a.m., Moule was off-duty and sleeping in his apartment when he was awakened by what he believed were gun shots. (Id.) From his apartment, Moule allegedly witnessed a man being chased and beaten by another. (Id. ¶ 10). Moule grabbed his service weapon and proceeded to the street barefoot, wearing shorts and a tee-shirt, in order to stop the beating. (Id. ¶¶ 10-11, 13). Moule did not have his police badge or any insignia to indicate he was a police officer. (Id. ¶ 11). Moule witnessed a man, who he believed to be the assailant, entering the passenger side of an SUV. (Id. ¶ 13). Moule approached within seven to eight feet of the SUV, brandished his weapon and fired. (Id. ¶ 14).[2] Moule fired several rounds into the SUV, exhausting the ammunition in the weapon's magazine. (Doc. 1 ¶ 14). At least one of the bullets struck the decedent, who was the driver of the vehicle. (Id. ¶ 14). Moule ran back to his apartment for more ammunition, then returned to the street to find the SUV had been driven from the scene. (Id. ¶ 16). At this point, Moule dialed "911" on his cell

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

[2] Moule claims he ordered the vehicle to stop, at which point someone inside the vehicle pointed a gun at him. (Doc. 13 ¶ 7). The assailant, Eric Allen King, subsequently pled guilty to aggravated assault by physical menace to a police officer, in addition to several other charges. (Doc. 22 at 1-2; id. Ex. A at 5; id. Ex. B).

2

phone and waited for police to arrive. (Id.) The decedent, who died hours later at the hospital from a gun shot wound to the head (id. ¶ 18), was not found to be in possession of a weapon, and no gun was ever found in the vehicle. (Doc. 1 ¶¶ 17, 20).

Brummell brought this suit pursuant to 42 U.S.C. § 1983 alleging Fourth Amendment excessive force and Fourteenth Amendment due process claims against the City of Harrisburg, Police Chief Kellar,[3] and Officer Moule,[4] (Doc. 1 ¶¶ 31-51), as well as pendent state law claims of negligence, wrongful death, intentional infliction of emotional distress ("IIED"), and assault and battery[5] against all three defendants. (Id. ¶¶ 52-73). Presently before the court are two motions to dismiss certain claims, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. One was filed jointly by the City and Kellar (Doc. 11); the other was

---

[3] Kellar is no longer police chief for the City of Harrisburg, having retired in December 2009. (Doc. 21 at 1).

[4] Brummell alleges this incident is one in a pattern for the Harrisburg Bureau of Police ("HBP"), generally, and Moule, specifically. (Doc. 1 ¶ 38.) Brummell asserts that the City and the HBP, under the leadership of Kellar, knew of Moule's propensities and yet lacked sufficient safeguards to prevent officers like Moule from engaging in lethal behavior and from targeting African Americans, like decedent. (Id. ¶¶ 25-28.)

[5] Brummell's claims of assault and battery appear in her complaint under the heading "Survival Action." (Doc. 1 ¶¶ 69-73). The applicable survival statute does not create a distinct cause of action; it preserves a cause of action so that it may be brought by decedent's estate following his or her death. See 20 PA. CONS. STAT. § 3373; 42 PA. CONS. STAT. § 8302. Brummell alleges that decedent "suffered physical pain, mental anguish, discomfort." (Doc. 1 ¶ 73). The torts of assault and battery provide relief for these injuries. Therefore, the court will interpret Brummell's survival action as claims for assault and battery.

3

filed by Moule. (Doc. 13). The motions have been fully briefed and are now ripe for disposition.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal

4

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.   Discussion**

Through the pleadings, the parties have disposed of all the state law claims against the City, (Doc. 19 at 7), and the Fourteenth Amendment and negligence claims against Moule. (Doc. 20 at 7). Brummell maintains Fourth Amendment excessive force claims against all defendants and Fourteenth Amendment due process claims against defendants Kellar and the City. Brummell maintains state law claims against Kellar and Moule for wrongful death, IIED, and assault and battery. Brummell also maintains a negligence claim against Kellar. Presently

5

before the court, then, are Moule's motion (Doc. 13) to dismiss the remaining state law claims against him, and Kellar's motion (Doc. 11) to dismiss all state law claims against him. The court will address these claims *seriatim*.[6]

### A. State Law Claims Against Moule

Under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), police officers are immune from state tort liability for acts within the scope of their employment except when the alleged conduct involves "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. Willful misconduct has been defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow." Horton v. City of Harrisburg, No. 1:06-CV-2338, 2009 WL 2225386 at *6 (M.D. Pa. 2009) (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)) (quotations omitted). Essentially, willful conduct is "synonymous with the term 'intentional tort.'" Id.[7] The existence of willful misconduct is a question of law. See Kuzel v. Krause, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995).

---

[6] The court may exercise jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

[7] Willful misconduct is distinct from wanton misconduct. The Pennsylvania Supreme Court has defined wanton misconduct to mean that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences." Evans v. Philadelphia Transp. Co., 212 A.2d 440 (Pa. 1965) (citations and quotations omitted).

6

Brummell has conceded that the negligence claim against Moule should be dismissed based on the PPSTCA, but Brummell maintains that Moule does not enjoy immunity from IIED, wrongful death, and assault and battery claims because he engaged in willful misconduct, as set forth in 42 PA. CONS. STAT. § 8550.

Moule argues Brummell has not claimed facts sufficient to show that he acted with the requisite mental state for willful misconduct. As support, Moule offers an elevated standard for willful misconduct: willful misconduct aforethought. See Kuzel v. Krause, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995) (interpreting the treatment of willful misconduct in Renk as "willful misconduct aforethought"). In terms of the earlier definition equating willful misconduct to an intentional tort, Moule argues that Pennsylvania case law subsequent to the Pennsylvania Supreme Court's decision in Renk v. City of Pittsburg, 641 A.2d 289 (Pa. 1994), requires Brummell to show that Moule intended to commit an intentional tort against the decedent. See Pettit v. Namie, 931 A.2d 790, 801 (Pa. Commw. Ct. 2007); Kuzel v. Krause, 658 A2d 856, 860 (Pa. Commw. Ct. 1995). The court finds Moule's argument to be consistent with the Pennsylvania Supreme Court decision in Renk, 641 A.2d 289.

In Renk, the court recited the definition of willful misconduct, which equated willful misconduct with the term "intentional tort." 641 A.2d 289, 293 (citing King v. Breach, 540 A.2d 976, 981 (Pa. Commw. Ct. 1988)). The Renk court then proclaimed that such a definition is incoherent in the context of a lawsuit based on police misconduct. See id. The court determined that a heightened standard for police

7

misconduct was warranted: to rise to the level of willful misconduct, a police officer must *intend to commit* the intentional tort. See Pettit, 931 A.2d at 801; Kuzel, 658 A.2d at 860 (summarizing the Renk opinion and noting that although judgment was entered against Renk on claims of assault, battery, and false imprisonment, Renk was not precluded from indemnification from the state because "he may not have intentionally committed these intentional torts"). The reasoning behind a heightened standard for police misconduct is sound. A police officer, in apprehending a suspect, could easily fulfill the elements of an intentional tort without engaging in misconduct. The Renk court explained the distinction in the context of an assault and battery as follows:

> "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree upon the person." Cohen v. Lit Brothers, 166 Pa. Super. 206, 209, 70 A.2d 419, 421 (1950) (Citation omitted.) A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. . . .
> . . .
> A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive, . . . . It is conceivable that a jury could find a police officer liable for those torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force.

Renk, 641 A.2d at 293-94. As the instant matter involves police misconduct, the court will apply the heightened standard of willful misconduct aforethought as set out by Renk and its progeny.

8

### 1. **Wrongful Death and Assault and Battery**

Under the heightened "willful misconduct aforethought" standard, the complaint raises plausible claims for assault and battery and wrongful death. Officer Moule's conduct as alleged is sufficiently egregious to rise to the level of willful or intentional, and, therefore, exceeds the scope of immunity provided in the PPSTCA. 42 PA. CONS. STAT. §8541.

The complaint that alleges Moule approached an SUV driven by the decedent, who was unarmed, and unloaded his entire chamber into the window of the car. Moule was barefoot and in civilian clothing, had no police insignia, and did not identify himself as a police officer. Moule contacted the police only after emptying his service weapon, running to his apartment for more ammunition, and returning to the street to locate the SUV. These facts as alleged are sufficient to raise a plausible claim for relief.

### 2. **Intentional Infliction of Emotional Distress**

Moule alleges that because the Pennsylvania Supreme Court has not formally recognized a cause of action for IIED, see Taylor v. Albert Einstein Medical Center, 754 A.2d 650, 652 (Pa. 2000), the claim must fail as a matter of law. (Doc. 17 at 9); see also Toney v. Chester County Hosp., 961 A.2d 192, 201 (Pa. Super. Ct. 2008). The court rejects this argument. The Pennsylvania Supreme Court has noted that if it were to recognize a cause of action, a plaintiff would need to allege the following elements: (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct

9

caused emotional distress, and (4) the resultant emotional distress was severe. Taylor, 754 A.2d at 652; see also Brufett v. Warner Commc'ns, Inc., 692 f.2d 910, 914 (3d Cir. 1982); Horton, 2009 WL 2225386 at *6 & n.7.

"The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor," Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987), and 'it is for the court to determine in the first instance' whether the element of outrageousness has been met. Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)). Alleged misconduct must be so extreme and outrageous "as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society. . . . the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" Strickland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (quoting Small v. Juniata College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)) (citations and quotations omitted).

In the instant matter, Brummell has plead facts sufficient to state a claim for which relief may be granted. As discussed supra, Brummell alleges that Moule approached the SUV driven by decedent, who was unarmed, and emptied his gun firing shots into the vehicle. (Doc. 1 ¶ 14). According to the complaint, Moule was barefoot and in civilian clothing, and he did not have his badge or any insignia indicating he was a police officer. He was essentially an interloper with a gun. (Id.

10

¶¶ 11, 13). Taken as true, the facts alleged in the complaint are sufficient to raise a plausible claim for IIED.

### B. State Law Claims against Kellar

Brummell maintains state law claims of negligence, wrongful death, IIED, and assault and battery against defendant Kellar. Kellar claims immunity under the PPSTCA.

#### 1. Negligence

Brummell alleges defendant Kellar was negligent in the training and supervision of his unit with respect to the discharge of firearms (Doc. 1 ¶ 54), and that Kellar "acted with reckless disregard for Plaintiff's constitutional rights by condoning, fostering and encouraging an environment where Officer Moule could recklessly or negligently act in disregard for the rights of African-American males." (Id. ¶ 56). However, the PPSTCA makes clear, Kellar is immune from liability for acts within the scope of employment that constitute unintentional torts. See 42 PA. CONS. STAT. § 8550; Horton, 2009 WL 2225386 at *6 (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). Therefore, with respect to the negligence claim, plaintiff fails to state a claim for which relief can be granted. Defendants' motion to dismiss the state law claim for negligence against Kellar will be granted.

#### 2. IIED, Wrongful Death, and Assault and Battery

The remaining state law claims of IIED, wrongful death, and assault and battery against Kellar, as alleged in the complaint, seek recovery for intentional misconduct. Brummell alleges defendant Kellar "intended to inflict" injury or

11

acted with "wanton and reckless disregard for the likelihood" of injury.[8] (See Doc. 1 ¶ 61; id. ¶¶ 67, 71, 73). Specifically, Brummell avers that the HBP, under Kellar's leadership, lacked and continues to lack sufficient safeguards to prevent officers from engaging in lethal behavior, such as premature discharge of a firearm without justification, and lacked and continues to lack safeguards to prevent officers from profiling and targeting African-Americans. (Id. ¶¶ 25-26). Additionally, Brummell asserts that the HBP, under Kellar's leadership, failed to adequately train police officers with respect to the same. (Id. ¶¶ 27-28). Essentially, Brummell claims that Kellar fostered "[a]n environment that encourages such technical incompetence and cavalier behavior among its police officers." (Doc. 19 at 9).

Kellar contends he is immune from liability because his actions do not rise to the level of willful or intentional misconduct as put forth in § 8550 and as interpreted by Pennsylvania courts. (See Doc. 12 at 3). Kellar cites this court's recent decision in Horton v. City of Harrisburg, 2009 WL 2225386, as dispositive with respect to his immunity in the instant matter. In Horton (a case incidentally in which Kellar was also a defendant), this court granted summary judgment in favor of Kellar on claims of wrongful death, assault and battery, and IIED. Id. at *6. As in the present matter, the plaintiff in Horton alleged that the city police, under

---

[8] If Brummell had alleged that Kellar's conduct amounted to wanton and reckless disregard for the likelihood of injury, then the claims would fail to rise to the level of "willful misconduct aforethought" as described in Renk and as discussed supra. However, Brummell's complaint alleges an intention to inflict injury, and, therefore, the court must consider the claims further.

12

Kellar's leadership, failed to adequately train officers and to provide remedial training to officers, thus, basically alleging "a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights." Id. at *5. In Horton, this court stated that the plaintiff had not established that the "alleged failure to train was an intentional means of depriving citizens of their constitutional rights" or that Kellar knew "that the alleged failure to train [] would lead to the death or emotional distress of arrestees." (Id. at *6). Kellar alleges that, similar to the deficiency in Horton, Brummell fails to allege intentional or willful conduct meant to lead to the death or emotional distress of decedent.

Brummell, however, focuses on the "substantially certain to follow" language in the definition of willful misconduct, (see Doc. 19 at 8-9); Horton, 2009 WL 2225386 at *6 (willful misconduct defined as "conduct whereby the actor desires to bring about the result that followed or at least was aware that it was *substantially certain to follow*" (emphasis added)), and claims Moule had a propensity for discharging firearms without justification and a tendency to profile and target African-American males. (Doc. 1 ¶¶ 37, 54). Therefore, Kellar should have known that an incident akin to the one at issue here was "substantially certain to follow," and yet Kellar did not establish adequate safeguards to prevent Moule and other officers from engaging in reckless behavior. (Doc. 19 at 9).

Brummell's argument fails to meet the heightened willful misconduct standard. Kellar must have intended or known, not *should* have known, that it was substantially certain an off-duty officer would encounter an assault suspect in the

13

middle of the night climbing into an SUV, and that the officer would kill the driver of the SUV by discharging his weapon into the vehicle's window. See Horton, 2009 WL 2225386 at *6 (plaintiff did not establish Kellar intended or knew his failure to train would lead to death or emotional distress of arrestee). Brummell's complaint does not allege that Kellar intended the incident to occur or was aware that the incident between Moule and the decedent was substantially certain to follow from his alleged failure to train his officers. Brummell has not plead facts to raise a plausible claim of intentional or willful misconduct aforethought by Kellar, therefore, she fails to state claims for which relief can be granted. However, the court will provide Brummell with leave to amend the complaint to allege facts sufficient to satisfy the heightened standard applied to police misconduct.

**IV.** **Conclusion**

For the foregoing reasons, the court will grant in part and reject in part the defendants' motions (Docs. 11, 13) to dismiss certain claims pursuant to FED. R. CIV. P. 12(b)(6). The court will grant in its entirety the motion (Doc. 11) for partial dismissal of the complaint filed jointly by the City and Kellar. The court will deny defendant Moule's motion (Doc. 13) to dismiss certain claims in its entirety (as to the claims remaining after plaintiff voluntarily withdrew the Fourteenth Amendment claim and state law negligence claim).

An appropriate order follows.

                                                       S/ Christopher C. Conner
                                                       CHRISTOPHER C. CONNER
                                                       United States District Judge

Dated:        September 30, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OCIE L. BRUMMELL**, Administratrix of the estate of Malcolm Brummell | : : : | CIVIL ACTION NO. 1:09-CV-01816 |
| **Plaintiff** | : : | (Judge Conner) |
| v. | : : | |
| **CITY OF HARRISBURG, CHARLES KELLAR**, and **MARC MOULE** | : : : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 30th day of September, 2010, upon consideration of defendants' motions to dismiss certain claims (Docs. 11, 13), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 13) of Moule to dismiss certain claims pursuant to FED. R. CIV. P. 12(b)(6) is DENIED in its entirety.

2. The joint motion (Doc. 11) of the City and Kellar for partial dismissal of the complaint is GRANTED in its entirety.

3. The state law claims of negligence, IIED, wrongful death, and assault and battery against defendant Kellar are DISMISSED without prejudice.

4. Brummell is GRANTED leave to file, within twenty (20) days of the date of this order, an amended complaint with respect to the state law claims against Kellar. If no such amended pleading is filed, the instant matter will proceed on all remaining claims.

                                              S/ Christopher C. Conner
                                              CHRISTOPHER C. CONNER
                                              United States District Judge